

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

HUDSON INSURANCE COMPANY,
  a Delaware corporation,

                        Plaintiff,

  v.

Civil Action No. $1:13$-CV - 0003
AJT/TCB

PERSAUD COMPANIES, INC.,
  a Maryland corporation,

ANDY PERSAUD

  and

GARY W. DAY,

                        Defendants.

### COMPLAINT FOR INDEMNITY AND QUIA TIMET RELIEF

The plaintiff, Hudson Insurance Company, by counsel, in accordance with Rule 3 of the

*Federal Rules of Civil Procedure*, files its Complaint for Indemnity and Quia Timet Relief (the

"Complaint") against the defendants.

### THE PARTIES

1.      Hudson Insurance Company ("Hudson") is a corporation duly organized and

existing under the laws of the State of Delaware, and maintains its principal office and place of

business in the State of New York.  Hudson is duly authorized to engage in the surety business in

the Commonwealth of Virginia.

2.      The defendant, Persaud Companies, Inc. ("PCI"), is a corporation duly organized

and existing under the laws of the State of Maryland which maintains its principal office and

place of business at 43480 Yukon Drive, Suite 200, Ashburn, Virginia, 20147 (Loudoun

County).

3.      The individual defendant, Andy Persaud, is and was at all times pertinent to this proceeding the president of PCI and an individual citizen of the Commonwealth of Virginia. Upon information and belief, Mr. Persaud resides at 41738 Putters Green Court, Leesburg, Virginia 20176 (Loudoun County), having recently moved from 41601 Swiftwater Drive, Leesburg, Virginia 20176 (Loudoun County).

4.      The individual defendant, Gary W. Day, is and was at all times pertinent to this proceeding an individual citizen of the State of Maryland.   Upon information and belief, Mr. Day resides at 9000 Burning Tree Road, Bethesda, Maryland 20817.

### JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction under the provisions of 28 U.S.C. § 1332 in that (a) Hudson is a citizen of the State of Delaware, (b) Mr. Persaud is a citizen of the Commonwealth of Virginia, (c) PCI is a citizen of the Commonwealth of Virginia where it maintains its principal place of business, and (d) Mr. Day is a citizen of the State of Maryland. The amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      Venue in this Court is proper as it is specifically conferred by the provisions of 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims raised by this Complaint occurred and continue to occur, a substantial part of the property that is the subject of the action is situated, and Mr. Persaud and PCI reside within this district.

### STATEMENT OF FACTS

7.      This Complaint seeks to enforce the unconditional rights of Hudson, as surety, under a General Indemnity Agreement, and to compel the specific performance of the respective

2

contractual obligations of PCI, Andy Persaud and Gary W. Day to, among other things and upon

demand, exonerate and indemnify Hudson by (a) immediately reimbursing it for any and all losses,

(b) depositing funds it deems sufficient to discharge any claim asserted against it whether or not

Hudson has made any payment or established any reserve in order to protect it from any loss, cost

or expense, and (c) procuring the full and complete discharge of Hudson, all in relation to a number

of contract payment and performance bonds it issued in connection with the construction of a

number of federal projects in Virginia and elsewhere along the Eastern Seaboard.

## Establishment of the Surety Relationship

8.       On or about October 28, 2011, Hudson, as surety, and PCI, as principal and

corporate indemnitor, and Andy Persaud and Gary W. Day, in their individual capacities as

personal indemnitors (PCI, Mr. Persaud and Mr. Day are sometimes collectively referred to as

the "Indemnitors"), executed a written General Indemnity Agreement (the "GIA") under the

terms and conditions of which they promised and bound themselves to exonerate and indemnify

Hudson, and to hold it harmless from and against any and all demands, liabilities, losses, costs,

damages, attorneys' fees and expenses of whatever kind or nature whatsoever which Hudson

might sustain or incur as surety by reason of having executed any bonds on behalf of PCI, on

account of any default under the GIA or by reason of the refusal to execute any bonds. A true and

accurate copy of the GIA is attached as Exhibit 1 and is incorporated by reference as if specifically

set forth in this Complaint.[1]

---

[1] The GIA executed on November 28, 2011 amended a prior General Indemnity Agreement executed by PCI and Mr. Persaud on December 21, 2010, an amendment occasioned by PCI's request that Hudson consider issuing additional contract bonds. Inasmuch as PCI's request would expand the bond program beyond the amount existing as of October 27, 2011, HUDSON required an amended indemnity agreement, the net effect of which (a) added Mr. Day as a personal indemnitor for projects/bonds from October 28, 2011, the execution date of the GIA, and (b) removed a clause in the December 21, 2010 General Indemnity Agreement providing that the liability of Mr. Persaud and PCI would not apply or extend to a personal residence located at 41601 Swiftwater Drive, Leesburg, VA 20176.

9.      In reliance upon the terms and conditions of the GIA, and the promises of the Indemnitors to exonerate and indemnify it for any and all losses as they agreed, Hudson considered the applications of PCI, and issued contract payment and performance bonds for at least twenty-six (26) construction projects, including federal projects awarded by various departments and agencies of the United States of America (the "United States"). A copy of the Bond Line Card is attached as Exhibit 2 and is incorporated by reference as if specifically set forth in this Complaint.[2]

10.     With respect to each of the federal construction projects, and in accordance with the terms and conditions of its various general contracts and the provisions of *The Miller Act*, 40 U.S.C. §§ 3131, *et seq.*, PCI furnished to the United States its contract payment and performance bonds for each of the projects. The bonds were issued by Hudson, as surety, naming PCI as its principal, and the United States as its obligee. Each of the performance bonds was issued to secure PCI's performance of its obligations to the United States under the general contract for which it was issued, and each of the payment bonds was issued for the protection of all persons who qualify as proper claimants who supplied labor and/or materials directly to PCI or one its subcontractors in connection with the construction of the project for which it was issued.

### Hudson's Initial Receipt of Claims, Requests for Information and Demand for Collateral

11.     In the early Spring of 2012, Hudson began receiving claims from a number of PCI's subcontractors and suppliers on a couple of the projects for which it issued contract bonds. Hudson began its investigation and requested detailed information from PCI concerning the projects for which PCI furnished contract bonds issued by Hudson. Hudson became increasingly concerned about the status of the projects and the use of contract funds, particularly since a number of the

---

[2] Ten of the bonds, from Bond No. HSA-MA-0288, issued on or after October 28, 2011, the date Mr. Day signed the GIA.

projects were ostensibly the subject of funds control agreements PCI had established with an entity

known as Chesapeake Escrow Services, LLC ("Chesapeake Escrow"), and since (a) it appeared

more contract funds had been received than disbursed to satisfy PCI's payment obligations on some

of the projects, (b) many of PCI's payment obligations remained outstanding, (c) payment bond

claims were being received, and (d) a number of subcontractors and suppliers reported that PCI was

trying to negotiate reduced payment or terms of payment over time.

12.      As of July 13, 2012 and notwithstanding repeated requests for detailed information

concerning the status of all of the projects for which it had issued bonds, including (a) copies of the

Disbursement and Control Agreements between PCI and Chesapeake Escrow, (b) funds control

records, (c) lists of outstanding accounts payable, (d) the status of payments, and (e) information

concerning a host of other issues, Hudson had only received copies of some of the Disbursement

and Control Agreements, a document which purported to be an escrow summary and a rudimentary

list of percentage of project completion without any of the original source documentation or any

of the certificates and applications for payment, schedules of value, lists of accounts payable,

lists of accounts receivable and projected profits for each project.  In short, notwithstanding

repeated requests, Hudson was provided with wholly insufficient information to appraise it of the

status of each project, the outstanding payment obligations and its overall potential exposure on a

project- by-project basis.

13.      In addition, as of July 13, 2012, Hudson (a) had received (i) five payment bond

claims totaling $ 852,339 on the Maintenance Dredging, Tangier Channels and Basin Project in

Accomack County, Virginia (the "Tangier Dredging Project"), a project previously reported by PCI

to be 100% complete, and (ii) two payment bond claims totaling $ 262,903 on the Replace Building

1000 Roof at Philadelphia Naval Business Center Project in Philadelphia , Pennsylvania ( the "Replace Building 1000 Project"), a project previously reported by PCI to be 80% complete, (b) was advised that a number of other payment bond claims were forthcoming and (c) became aware of potential performance bond claims in relation to other projects for which it issued contract bonds on behalf of PCI.

14.    Given the lack of sufficient response to its requests for information and its receipt of payment bond claims in the then collective amount of $1,115,242, and in accordance with the terms and conditions of the GIA, Hudson, by letter dated July 13, 2012 to PCI, Mr. Persaud and Mr. Day (a) confirmed its receipt of the various payment bond claims, (b) observed that many of its requests for information and documentation remained outstanding and demanded that they be addressed, and (c) asserted its demand that they provide collateral in the amount of $1,215,242 no later than 12:00 Noon on Monday, July 23, 2012 (the "Collateral Demand"). A true and correct copy of HUDSON's July 13, 2012 Collateral Demand is attached as Exhibit 3 and is incorporated by reference as if specifically set forth in this Complaint.

15.    Within a few days of its July 13, 2012 Collateral Demand, Hudson received (a) three additional payment bond claims collectively totaling $ 236,560.85 increasing its exposure for payment bond claims received to $1,351,802.85 and (b) a notice to cure under a performance bond. The additional payment bond claims and the notice to cure included:

      a.    A payment bond claim in the amount of $74,913.60 from Chevy Chase Contractors, Inc. on the USUHS Sidewalk Repair Project in Bethesda, Maryland, a project previously reported by PCI to be 100% complete.

      b.    Two additional payment bond claims on the Replace Building 1000 Roof Project from Roofing Resources, Inc. in the collective amount of $161,647.25, a project reported by PCI to be 80% complete.

c.   A Notice of Cure Hudson received from the United States, as obligee, directed to PCI in connection with the Installation of Flood Gates Project at the Naval Submarine Base in New London, Connecticut. The notice was issued as a result of a work stoppage related to PCI's failure to satisfy its payment obligations to one of its subcontractors which refused to continue until it received payment. A true and accurate copy of the United States' July 16, 2012 Notice to Cure is attached as Exhibit 4 and is incorporated by reference as if specifically set forth in this Complaint.

### Response to and Efforts to Resolve Collateral Demand

16.   Following receipt of Hudson's July 13, 2012 Collateral Demand, PCI made arrangements, without explanation, to satisfy *some* of the claims which are the subject of Hudson's July 13, 2012 Collateral Demand and the payment issues referenced in ¶13 above. By email dated July 17, 2012, PCI suggested its recent financial hardships were the result of his lack of awareness of how "upside down" PCI was on the Tangier Dredging Project, disputed a $685,419 payment bond claim asserted by Southern Maryland Dredging, Inc. (the "Southern Maryland Dredging Payment Bond Claim"), and requested the opportunity to meet and discuss reducing the amount of collateral demanded.

17.   In response to Mr. Persaud's request and given the fact that, with the exception of the Southern Maryland Dredging claim on the Tangier Dredging Project, PCI appeared to have addressed the payment bond claims referenced in ¶ 13, and advised it would be in a position to address the claims referenced in ¶15 above, Hudson agreed to meet and discuss potential resolution of its July 13, 2012 Collateral Demand.

18.   On August 9, 2012, PCI and Hudson met and reached an agreement to satisfy Hudson's July 13, 2012 Collateral Demand. Under the terms of the agreement, the parties agreed that:

a. Hudson would reduce its Collateral Demand to $275,000 which was to be satisfied by payment in cash or the receipt of a satisfactory irrevocable letter of credit,

b. PCI was to transfer funds control on the (i) Swaybranch Stormwater Detention Facility Project in Roswell, Georgia (the "Swaybranch Project"), (ii) Solar Thermal Collector Panels for Building 292 Project in Newport, Rhode Island (the "Solar Panels Project") and (iii) UEM Building 29 Power Plant Project in Groton, Connecticut (the "UEM Building Power Project") to Hudson or an escrow agent of its choosing, and

c. PCI was to add Hudson as a party to the Disbursement and Control Agreements PCI had with Chesapeake Escrow for all other projects for which Hudson issued contract bonds, with the condition that funds could not be disbursed without HIC's express consent.

The parties concluded the meeting with the commitment to fulfill the terms as set forth above.

19. In the interim, Hudson received yet another payment bond claim on another project, learned that, contrary to PCI's prior representations, at least one claim which was the subject of its Collateral Demand had not been satisfied in full and was advised that some of the information which it had previously received from PCI was materially incorrect:

a. On or about August 13, 2012, Hudson received a payment bond claim from Fire Suppression Systems Group in the amount of $106,322.50 on the Phase I Building 80 Project in Newport, Rhode Island, an outstanding payable which PCI subsequently advised it thought it had paid (the "Fire Suppression Payment Bond Claim"),

b. On or about August 15, 2012, Hudson learned that, contrary to the representations of PCI on July 17, 2012, the claim asserted by Town Point Tug & Barge, Inc. ("Town Point Tug") on the Tangier Dredging Project had not been paid in full and continued to increase as a result of daily rental charges continuing to accrue as a result of damage to the equipment PCI returned which Town Point Tug could not return to its rental inventory (the "Town Point Tug Payment Bond Claim"),

c. On August 17, 2012, PCI, by counsel, advised Hudson that, contrary to earlier representations that there would be a profit on the Solar Panels Project in the amount of $75,000, PCI discovered it collectively owed three subcontractors a total of $385,000 in connection with that project. A true and accurate copy of the August 17, 2012 email from PCI's now former counsel is

attached as Exhibit 5 and is incorporated by reference as if specifically set forth in this Complaint.

20.     In addition, by the same email on August 17, 2012, counsel for PCI advised Hudson that the $275,000 figure - to which the parties agreed during the August 9, 2012 meeting in order to satisfy Hudson's July 13, 2012 Collateral Demand - could not be paid in one lump sum, but represented an immediate $50,000 cash installment could be wired to Hudson, with the remaining $225,000 to be paid in the future. In response, Hudson advised that the $50,000 was to be paid immediately and that the $225,000 balance was to be paid the first week of September.

21.     Hudson did not receive the $50,000 initial deposit to be applied to the Collateral Demand until August 24, 2012. And, as of that date, and notwithstanding PCI's promises and representations, Hudson did not receive (a) the balance of $225,000 to be held as collateral, (b) satisfactory responses to its inquiries concerning (i) the Fire Suppression Payment Bond Claim, (ii) theTown Point Tug Payment Bond Claim and (iii) the Southern Maryland Dredging Claim, (c) the documentation necessary to amend the Disbursement and Control Agreements which govern the escrow arrangements on the projects on which Chesapeake Escrow was to continue as the escrow agent as agreed on August 9, 2012 in order to add Hudson as a party to the agreements and require its consent prior to disbursement of any further escrow funds, and (d) the documentation previously requested concerning the overall status of each of PCI's projects which Hudson bonded, including but not limited to copies of all (i) applications and certificates for payment submitted by PCI to each of the project owners, and those submitted to PCI by each of its subcontractors and suppliers, (ii) schedules of value, for each project, (iii) lists of accounts payable on each project, (iv) lists of accounts receivable on each project, and (v) complete escrow records relating to the receipt and distribution of funds which are the subject of the

9

various Disbursement and Control Agreements between PCI and Chesapeake Escrow.

22.     Hudson has continued to investigate and tried to obtain the necessary information to evaluate the status of the various projects and assess the potential exposure. By letter dated September 2, 2012, a copy of which is attached as Exhibit 6, the undersigned, as counsel for Hudson, wrote counsel for the Indemnitors, confirming the then current status and renewing Hudson's request for the requested documents. Additional letters dated September 10, 2012 and September 28, 2012, copies of which are attached as Exhibits 7 and 8, respectively, the former of which increased the collateral demand to $ 381,332.50 as a result of additional payment bond claims, an amount which was then believed by Hudson to discharge the then existing payment bond claims.

23.     PCI finally agreed to provide Hudson access to its books and records which occurred in mid-October 15, 2012. After two days, the inspection revealed that there were numerous documents which still needed to be located by PCI and provided to Hudson, including a complete list of outstanding payables. The requests for those documents remain outstanding.

24.     As of the filing of this Complaint, and notwithstanding ongoing and repeated efforts and requests, both by email and orally, Hudson has still not received the documentation necessary to fully evaluate and assess the status of PCI's outstanding payables and/or the work performed or to be performed on the various projects, and assess potential exposure under the various payment and performance bonds. In the meantime, Hudson has continued to receive additional claims and notices of claim under the various payment bonds, and notices to cure and/or to show cause from the various obligees in relation to PCI's deficiencies in contract performance and/or failures to perform thus exposing Hudson to significant liabilities under the various performance bonds.

25.     As of December 28, 2012, Hudson has received claims and/or notices of claim under the payment bonds issued (a) before October 28, 2012 in the amount of $ 979,460.62, and (b) on or after October 28, 2012 in the amount of $ 1,834,736.94.  Together, all payment bond claims thus far collectively total $ 2,814,197.56, a figure which is expected to increase.  The payment bond claims Hudson has received thus far include claims from the following entities in connection with the following projects, some of which have resulted in lawsuits:

A.  USUHS Sidewalk Repair Project
Bethesda, MD

Obligee:       United States/Department of the Navy
Bond No.:      HSA-MA-0176
Bond Date:     June 21, 2011

| Claimant | Claim Amount | |
|---|---|---|
| Chevy Chase Contractors, Inc. | $ 74,913.60 | |
| Subtotal | $ 74,913.60 | $ 74,913.60 |

B.  Replace Building 1000 Roof Project
Philadelphia, PA

Obligee:       United States/Department of the Navy
Bond No.:      HSA-MA-0201
Bond Date:     July 25, 2011

| Claimant | Claim Amount | |
|---|---|---|
| Architecture, Inc. | $ 52,842.00 | |
| Roofing Resources, Inc. | 161,000.00 | |
| Subtotal | $ 213,842.00 | $ 213,842.00 |

C.  Installation of Flood Gates
New London, CT

Obligee:       United States/Department of the Navy
Bond No.:      HSA-MA-0213
Bond Date:     August 3, 2011

| Claimant | Claim Amount | |
|---|---|---|
| Ironcraft Fabricating | $ 10,121.00 | |
| Pressray Corporation | 252,761.52 | |
| Subtotal | $ 262,882.52 | $ 262,882.52 |

11

D. Relocate Academic Center, Levy Center
   Annapolis, MD

   | Obligee: | United States/Department of the Navy |
   |---|---|
   | Bond No.: | HSA-MA-0225 |
   | Bond Date: | August 25, 2011 |

   | Claimant | Claim Amount | |
   |---|---|---|
   | Broadwater Woodworking, Inc. | $ 35,000.00 | |
   | CB Flooring | 16,000.00 | |
   | Corbin Home Improvement | 20,000.00 | |
   | Maryland Office Interiors | 238,000.00 | |
   | National Fire Protection | 8,000.00 | |
   | RM Thornton Mechanical | 34,500.00 | |
   | Subtotal | $ 351,500.00 | $ 351,500.00 |

E. Fire Alarm Panel and Life Safety, Building 80
   Newport, RI

   | Obligee: | United States/Department of the Navy |
   |---|---|
   | Bond No.: | HSA-MA-0240 |
   | Bond Date: | September 12, 2011 |

   | Claimant | Claim Amount | |
   |---|---|---|
   | Encore Holdings, LLC d/b/a Fire Suppression Systems Group | $ 76,322.50 | |
   | Subtotal | $ 76,322.50 | $ 76,322.50 |

F. Cooling Tower Installation Project
   Newport, RI

   | Obligee: | United States/Department of the Navy |
   |---|---|
   | Bond No.: | HSA-MA-0289 |
   | Bond Date: | October 28, 2011 |

   | Claimant | Claim Amount | |
   |---|---|---|
   | Eagle Industries | $ 34,829.00 | |
   | Mello Construction | 8,137.00 | |
   | Subtotal | $ 42,966.00 | $ 42,966.00 |

G. Fire Escape Building 1251
   Newport, RI

   | Obligee: | United States/Department of the Navy |
   |---|---|
   | Bond No.: | HSA-MA-0290 |
   | Bond Date: | October 28, 2011 |

12

| Claimant | Claim Amount | |
|---|---|---|
| Eagle Industries | $ 5,284.00 | |
| Subtotal | $ 5,248.00 | $ 5,248.00 |

H.  Solar Thermal Collector Panels, Building 292
    Newport, RI

        Obligee:      United States/Department of the Navy
        Bond No.:     HSA- MA-0291
        Bond Date:    October 28, 2011

| Claimant | Claim Amount | |
|---|---|---|
| Bay Associates | $ 319,000.00 | |
| East Coast Landscaping and Construction, Inc. | 99,396.00 | |
| Eagle Industries | 14,378.00 | |
| Go Contractors, Inc. d/b/a Eco Electric | 167,300.00 | |
| MF Construction Corp. | 59,232.75 | |
| Subtotal | $ 659,306.75 | $ 659,306.75 |

I.  Maintenance Dredging Tangier Channels and Basin Project
    Accomack County, VA

        Obligee:      United States/U.S. Army Corps of Engineers
        Bond No.:     HSA-MA-0293
        Bond Date:    October 28, 2011

| Claimant | Claim Amount | |
|---|---|---|
| Southern Maryland Dredging | 685,419.00 | |
| Sunbelt Rentals, Inc. | 40,171.71 | |
| Town Point Tug & Barge | 24,345.00 | |
| Subtotal | $ 749,935.71 | $ 749,935.71 |

J.  Replace Roofs Bays 8A & 8B
    Springfield, VA

        Obligee:      United States/General Services Administration
        Bond No.:     HSA-MA-0317
        Bond Date:    December 2, 2011

| Claimant | Claim Amount | |
|---|---|---|
| MJB, Inc. t/a Built-Up Roofing Systems | $ 177,280.48 | |
| Subtotal | $ 177,280.48 | $ 177,280.48 |

K.  Swaybranch Stormwater Detention Facility
Roswell, GA

Obligee:      United States/U.S. Army Corps of Engineers
Bond No.:     HSA-MA-0372
Bond Date:    February 20, 2012

| Claimant | | Claim Amount | |
|---|---|---|---|
| RJDE, Inc. | | $  200,000.00 | |
| | Subtotal | $  200,000.00 | $  200,000.00 |
| | Total | | $ 2,814,197.56 |

26.     In addition, based upon the books and records to which it has had access, it appears

PCI has at least another $267,736 in possible accounts payable on projects for which Hudson issued

contract payment bonds.

27.     to the payment bond claims and/or notices of claim, Hudson has, as of the date of

the filing of this Complaint, received claims, notices to cure and/or letters to show cause from

various obligees/agencies of the United States relating to PCI's failure to perform and/or deficient

performance on at least six of the projects for which Hudson issued contract performance bonds

naming PCI as its principal.  Two of the projects are the subject of performance bonds Hudson

issued prior to October 28, 2011, and the remaining four are the subject of performance bonds

issued on or after October 28, 2011.  As a result of the lack of documentation and information

concerning the overall status, Hudson is not in the position to assess the potential exposure under

the various performance bonds at issue.  The projects thus far include:

A.  Installation of Flood Gates
Groton, CT

Obligee:      United States/Department of the Navy
Bond No.:     HSA-MA-0213
Bond Date:    August 3, 2011

B.  B-54 Heat Conversion Project
Newport, RI

Obligee:        United States/Department of the Navy
Bond No.:       HSA-MA-0248
Bond Date:      September 20, 2011

C.  Cooling Tower Installation Project
    Newport, RI

Obligee:        United States/Department of the Navy
Bond No.:       HSA-MA-0289
Bond Date:      October 28, 2011

D.  Solar Thermal Collector Panels, Building 292 Project
    Newport, RI

Obligee:        United States/Department of the Navy
Bond No.:       HSA- MA-0291
Bond Date:      October 28, 2011

E.  Lafayette Plaza- Phase II – Exterior Column Cladding Project
    New York, NY

Obligee:        United States/Department of General Services
Bond No.:       HSA- MA-0292
Bond Date:      October 28, 2011

F.  UEM Power Plant Lighting & Aus. Load Building 29 Project
    Groton, CT

Obligee:        United States/Department of the Navy
Bond No.:       HSA- MA-0371
Bond Date:      February 17, 2012

Copies of some of the obligees' various letters are collectively attached as Exhibit 9.

28.    In addition to the outstanding (a) payment bond claims and/or notices of claim, which currently total $ 2,814,197.56, (b) performance issues and probable exposure under the various performance bonds, (c) the demands for collateral, (d) amendments to the Disbursement and Control Agreements to be retained by Chesapeake Escrow, and (e) requests for documentation relating to the projects, Hudson has also sustained and is continuing to incur losses in the form of consultants' fees, costs and expenses, and attorneys' fees, costs and expenses, all of which continue

15

to increase.

29.     Under the terms and conditions of the GIA, PCI, Mr. Persaud and Mr. Day

specifically agreed and promised, among other things:

> [T]o pay to Surety upon demand:
>
> > 1. All loss, costs and expenses of whatsoever kind or nature,
> >    including, but not limited to: court costs and the cost of services
> >    rendered by attorneys (whether Surety at its sole option elects to
> >    employ its own attorney, or permits or requires Undersigned to
> >    make arrangements for Surety's legal representation),
> >    investigators, accountants, engineers, or other consultants, and
> >    any other losses, costs or expenses incurred by Surety by reason
> >    of having executed any Bond, or incurred by it on account of any
> >    Default under this Agreement by any of the Undersigned, or by
> >    reason of the refusal to execute any bond.
> >
> >    .   .   .   .
> >
> > 2. An amount sufficient to discharge any claim made against Surety
> >    on any Bond, whether Surety will have made any payment or
> >    established any reserve therefore. Such payment to be in the
> >    amount deemed necessary by the Surety to protect it from any
> >    loss, cost or expense on any Bond. The Undersigned
> >    acknowledges that their failure to pay, immediately on demand
> >    by the Surety, constitutes a Default under this Agreement and
> >    entitles the Surety to injunctive relief for specific enforcement of
> >    the foregoing provision.

GIA, at 2.

30.     Hudson has called upon PCI, Mr. Persaud and Mr. Day to specifically perform and

fulfill their contractual obligations to exonerate and indemnify it in accordance with the terms and

conditions of the GIA.

31.     Notwithstanding Hudson's demands, and their contractual obligations to honor

those demands under the terms and conditions of the GIA, PCI, Mr. Persaud and Mr. Day have

wholly failed and otherwise refused to provide the collateral required by Hudson's Collateral

Demand, even as reduced by agreement on August 9, 2012 and as further modified at PCI's request, and within the time required, and to otherwise exonerate, indemnify and hold Hudson harmless by procuring the discharge of the various bonds.

32.     Under the terms and conditions of the GIA, Hudson is entitled (a) to be fully exonerated and indemnified by (i) PCI and Mr. Persaud, jointly and severally, from and against any and all liabilities, losses, damages, charges, expenses, costs, and  consultants' and attorneys' fees as the result of the issuance of the contract bonds on behalf of PCI prior to October 28, 2011, and (ii) PCI, Mr. Persaud and Mr. Day, jointly and severally, from and against any and all liabilities, losses, damages, charges, expenses, costs, and consultants' and attorneys' fees as the result of the issuance of the contract bonds on behalf of PCI on and after October 28, 2011, and (b) to enforce those obligations and immediately compel the specific performance of those obligations by PCI, Mr. Persaud and Mr. Day.

### COUNT I
### SPECIFIC PERFORMANCE

33.     Hudson restates and incorporates the allegations as set forth in ¶¶ 1 through 32 above as if specifically set forth in this paragraph.

34.     Hudson, in reliance upon the execution of the GIA by PCI, Mr. Persaud and Mr. Day, issued its contract payment and performance bonds on numerous federal construction projects naming PCI as its principal, and the United States as its obligee, has been presented with numerous claims under its various payment bonds, and faces significant exposure under both its payment and performance bonds, and has and will continue to incur losses and consultants' and attorneys' fees, costs and expenses by virtue of the issuance of the bonds.

35.     PCI, Mr. Persaud and Mr. Day agreed to exonerate and indemnify Hudson, upon

demand, by among other things, collateralizing their indemnity obligations, and discharging any liabilities under the bonds.

36. Notwithstanding Hudson's demands, PCI, Mr. Persaud and Mr. Day have wholly refused and/or otherwise failed to discharge all of the liabilities under the various bonds, collateralize their indemnity obligations and/or otherwise perform their obligations under the GIA.

37. PCI, Mr. Persaud and Mr. Day's actions and failures to act constitute a default under the GIA and a breach of contract, which breaches are material in nature and are subjecting Hudson to significant exposure and other losses.

38. As a result of their failure to perform, for which there is no adequate remedy at law, Hudson is entitled to the entry of an order compelling the Indemnitors and each of them to immediately and specifically perform their obligations under the express terms and conditions of the GIA by (a) depositing sufficient funds to discharge any claim made against Hudson, whether Hudson has made any payment or established and reserve, and to satisfy all outstanding consultant s' and attorneys' fees, costs and expenses, (b) completely discharging the liabilities for which Hudson is responsible under the bonds and/or providing collateral and/or an irrevocable letter of credit in the amount of at least $ 3,500,000 or as the evidence may establish, and (c) providing full and complete access to their books and records.

WHEREFORE, Hudson requests the entry of an order compelling PCI, Mr. Persaud and Mr. Day, jointly and severally, and as their interests appear, to immediately and specifically perform their obligations under the GIA.

**COUNT II**
**QUIA TIMET AND INJUNCTIVE RELIEF**

39.     Hudson restates and incorporates the allegations as set forth in ¶¶ 1 through 38above as if specifically set forth in this paragraph.

40.     As of the filing of this Complaint, Hudson (a) has been presented with numerous payment bond claims on a number of the projects, (b) faces significant exposure under the various performance bonds, (c) has not received adequate assurances from the Indemnitors as to the actual status of all the bonded projects, (d) has not received copies of all relevant project documents, including but not limited to, copies of all (i) Applications and Certificates for Payment submitted by PCI to each of the project owners, and those submitted to PCI by each of its subcontractors and suppliers, (ii) Schedules of Value for each project, (iii) lists of accounts payable on each project, (iv) lists of accounts receivable on each project, and (v) complete escrow records relating to the receipt and distribution of funds which are the subject of the various Disbursement and Control Agreements between PCI and Chesapeake Escrow, and (e) has not received sufficient collateral in accordance with the terms and conditions of the GIA.

41.     Hudson justifiably fears it will sustain significant losses and irreparable harm as a result of its issuance of the contract bonds.  Hudson anticipates that it may sustain losses of at least $2,814,197.56 in the form of payment bond claims, in addition to performance bond claims, consultants' and attorneys' fees, costs and expenses.

42.     In accordance with the terms and conditions of the GIA, and the equitable doctrines of exoneration and *quia timet*, Hudson is entitled to have the Indemnitors, jointly and severally, place it immediately in funds sufficient to cover the losses it has sustained and the losses it anticipates by virtue of its issuance of the contract payment  and performance bonds.

19

43.     Unless the assets of all of PCI, Mr. Persaud and Mr. Day are marshaled, accounted for and preserved, and their indemnity obligations to Hudson are collateralized and Hudson is placed in funds or otherwise secured, Hudson's obligations under the contract bonds, and its rights of exoneration and indemnification under the GIA and the law will not be adequately secured.

44.     Hudson is entitled to be placed in funds in the amount of $3,500,000, or as the evidence may otherwise establish, and fully collateralized by the Indemnitors immediately and prior to making any further payments in discharge of its bond obligations.

45.     Hudson is without a plain, speedy or adequate remedy at law which will serve to immediately exonerate and indemnify it for its losses and probable liabilities, and will be irreparably and permanently injured unless this Court grants immediate injunctive and equitable relief. Further, unless injunctive and *quia timet* relief are granted immediately, Hudson is fearful that the Indemnitors are likely to sell, transfer, dispose of, lien, secure or otherwise divert or encumber their assets from being used to discharge their obligations to exonerate and indemnify Hudson, all to Hudson's irreparable harm.

46.     Hudson has been forced to retain legal counsel and incur other expenses and costs in pursuit of its rightful interests in this matter, and is entitled to be exonerated and indemnified in accordance with the terms and conditions of the GIA and the law.

WHEREFORE, Hudson requests the entry of an order (1) awarding judgment in its favor, and (2) granting mandatory and prohibitory injunctive relief against PCI, Mr. Persaud and Mr. Day, jointly and severally, and as their interests appear, as follows:

A.      Directing PCI, Mr. Persaud and Mr. Day, and their executors,

administrators, distributees, successors and assigns, or anyone acting in concert with them
or on their behalf to:

      1.     Immediately exonerate Hudson and place it in funds in at least the
amount of $3,500,000 by money, property, liens or other security interests in
property, as determined by Hudson, to collateralize and serve as ample security
for its obligations under the payment bonds, and rights of exoneration and
indemnification under the GIA;

      2.     Render to Hudson an immediate, full and complete accounting of
any and all assets owned by them or in which they have had any interest since (a)
December 21, 2010 in the case of PCI and Mr. Persaud, and (b) October 28, 2011
in the case of Mr. Day, and the disposition of the same;

      3.     Allow Hudson and/or their representatives immediate, full and
complete access to all financial records, books and accounts which are maintained
by them or on their behalf;

      4.     Indemnify and exonerate Hudson for any and all liabilities, losses
and expenses, including attorneys' fees, which have been and/or may be incurred
by Hudson as a result of Hudson having executed bonds for PCI;

      B.     Permanently enjoining and restraining PCI, Mr. Persaud and Mr. Day and

their executors, administrators, distributees, successors and assigns, or anyone acting in

concert with them or on their behalf, from:

      1.     Selling, transferring or otherwise disposing of or encumbering their
assets and property in any manner, form or shape whatsoever;

      2.     Allowing their assets and property to be liened or otherwise
encumbered, unless and until Hudson shall be placed in funds or otherwise
secured as required by the GIA;

      C.     Granting a lien upon all of the corporate and personal assets and property

of PCI, Mr. Persaud and Mr. Day and their executors, administrators, distributees,

successors and assigns, or anyone acting in concert with them or on their behalf,

including all real and personal property, which they may own or in which they have an

interest, either individually or jointly, for the purpose of securing Hudson against any and all losses that it may sustain or incur by virtue of having executed payment bonds for PCI, and to remain in effect unless and until Hudson shall be placed in funds or otherwise secured as required by the GIA; and

     D.    Awarding such further relief as the Court deems just.

**COUNT III**
**BREACH OF CONTRACT**

47.    Hudson restates and incorporates the allegations as set forth in ¶¶ 1 through 46 above as if specifically set forth in this paragraph.

48.    Under the terms and conditions of the October 28, 2011 GIA, the Indemnitors, jointly and severally, are obligated to comply with all of the terms and conditions of the GIA, and to exonerate and indemnify Hudson from and against any and all liabilities, losses, damages, costs, charges, expenses, and consultants' and attorneys' fees incurred as a result of the issuance of any bond on behalf of PCI.

49.    As a result of the receipt of pending claims, and Hudson's issuance of the various payment and performance bonds on behalf of PCI, Hudson (a) has received pending claims under its various payment bonds in the amount of $ 2,814,197.56, (b) anticipates losses under its various performance bonds, and (c) has incurred and expects to incur additional consultants' and attorneys' fees, costs, expenses,.

50.    The Indemnitors' failure and/or refusal to provide complete and unfettered access to their books and records, and to indemnify and exonerate Hudson under the terms and conditions of the GIA constitutes a default and material breaches of contract, the direct and natural result of which has caused Hudson to sustain significant damages.

22

WHEREFORE, Hudson seeks judgment against PCI, Inc., Andy Persaud, and Gary W. Day, jointly and severally, and as their interests appear, in the principal amount of $ 3,500,000, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment as, costs, expenses, and consultants' and attorneys' fees, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the GIA.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**

51.     Hudson restates and incorporates the allegations as set forth in ¶¶ 1 through 50 above as if specifically set forth in this paragraph.

52.     Under the terms and conditions of the GIA, PCI, Mr. Persaud and Mr. Day, and each of them, agreed that

> all monies earned by [PCI] under any Contract [for which Hudson issued any bond] are trust funds, wither in the possession of [PCI] or otherwise, for the benefit of, and for payment of [PCI's] obligations for labor, material and supplies furnished to [PCI] in performance of such Contract for which [Hudson] would be liable under any Bond on such Contract, and the performance of [PCI's] or [Hudson's] obligations to any obligee on such Contract.

GIA, ¶4 at p. 3.

53.     Under the terms and conditions of the GIA and its corresponding trust fund provisions, PCI, Mr. Persaud and/or Mr. Day owe a fiduciary duty to Hudson to preserve the integrity of the contract funds for each contract, and to apply them solely for the payment of PCI's payment obligations to its subcontractors, laborers and materialmen on each of the applicable contracts, and for the performance of the obligations of PCI and/or Hudson under the contracts and/or bonds.

23

54.    If and to the extent the Indemnitors have failed to fulfill their fiduciary duty and the various contract funds have been used for purposes other than their intended purpose, or the funds are being or have been comingled, then PCI, Mr. Persaud and Mr. Day have breached their fiduciary duties, which breaches are material in nature and have caused damaged to Hudson.

WHEREFORE, Hudson seeks judgment against PCI., Andy Persaud, and Gary W. Day, jointly and severally, and as their interests appear, in the principal amount of $ 3,500,000, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, and its consultants' and its attorneys' fees, costs and expenses, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the GIA.

Respectfully submitted,

**HUDSON INSURANCE COMPANY**

By Counsel

Richard T. Pledger (VSB No. 28102)
Archibald Wallace, III (VSB No. 6005)
Thomas J. Moran (VSB No. 71296)
Christopher A. Cheuk (VSB No. 70891)
WALLACEPLEDGER, PLLC
7100 Forest Avenue
Suite 302
Richmond, Virginia 23226-3742
Telephone:    (804) 282-8300
Facsimile:    (804) 282-2555
e-mail:    rpledger@wallacepledger.com
email:    axwallace@wallacepledger.com
email:    tmoran@wallacepledger.com
e-mail:    ccheuk@wallacepledger.com
*Counsel for Hudson Insurance Company*

24