UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
HUDSON INSURANCE COMPANY,        )
     Plaintiff,                  )
                                 )
          v.                     )  Civil Action No. 1:13cv3
                                 )
PERSAUD COMPANIES, INC., et al., )
     Defendants.                 )
                                 )
```

SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter comes before the Court as supplemental proceedings to the initial Report and Recommendation in this matter issued by the undersigned on August 21, 2013.  (Dkt. 77.) That Report and Recommendation recommended the entry of default judgment against defendants Andy Persaud and Persaud Companies, Inc., and in favor of plaintiff Hudson Insurance Company and defendant/cross-claim plaintiff Gary W. Day.  Now before the Court are the parties' memoranda regarding damages.[1]

After a representative for defendants Andy Persaud and Persaud Companies, Inc. failed to appear at the hearing on

---

[1] In addition to the record analyzed by the Court for the initial Report and Recommendation (Dkt. 77), the record before the Court includes the Complaint ("Compl.") (Dkt. 1), defendant/cross-claim plaintiff Day's Cross-claim ("Cross-cl.")(Dkt. 29), plaintiff's Supplemental Memorandum of Damages (Dkt. 99), defendant/cross-claim plaintiff Day's Supplemental Memorandum of Damages (Dkt. 108), plaintiff's Second Supplemental Memorandum (Dkt. 115), defendant/cross-claim plaintiff Day's Summary Memorandum of Law in Support of his Motion for Default Judgment against Persaud Companies, Inc. and Andy Persaud (Dkt. 117), and the affidavits and exhibits submitted in support of the aforementioned pleadings.

October 11, 2013, the undersigned Magistrate Judge took the remaining issues under advisement.  Plaintiff submitted supplemental memoranda and exhibits to this Court on September 13, 2013, and on November 15, 2013.  (Dkts. 99, 115.) Defendant/cross-claim plaintiff Day submitted supplemental memoranda and exhibits on October 4, 2013, on October 16, 2013, and on November 22, 2013.  (Dkts. 108, 114, 117.)  The matter is now properly before this Court for a final Report and Recommendation.

<u>INTRODUCTION</u>

**I. Background**

This suit concerns a General Indemnity Agreement ("GIA") executed by the parties on October 28, 2011.  (Compl. ¶ 8.) Plaintiff Hudson Insurance Company ("plaintiff" or "Hudson"), a Delaware corporation with its principal place of business in New York, engages in the surety business in the Commonwealth of Virginia.  (<u>Id.</u> at ¶ 1.)  Defendant Andy Persaud ("Persaud"), a Virginia citizen, was at all times relevant the president of Persaud Companies, Inc. ("PCI"), a Maryland corporation with its principal place of business in Virginia.  (<u>Id.</u> at ¶¶ 2-3.) Defendant/cross-claim plaintiff Gary W. Day ("Day") is a Maryland citizen.  (<u>Id.</u> at ¶ 4.)  Pursuant to the General Indemnity Agreement, PCI, Persaud, and Day agreed to exonerate and indemnify plaintiff, acting as surety, for any and all

2

losses incurred in connection with performance and payment bonds issued by plaintiff on behalf of PCI.  (Id.)

Prior to the execution of the GIA, PCI and Persaud entered into a separate agreement with Day whereby Day agreed to execute the GIA in exchange for payments by defendants PCI and Persaud. (Cross-cl. ¶ 6.)  PCI and Persaud further agreed that their indemnity obligations under the GIA would be primary to those of Day, and that PCI and Persaud would indemnify Day for any and all losses incurred pursuant to the GIA.  (Id.)

Beginning in early 2012, various contractors and subcontractors began making claims to plaintiff regarding bonds issued pursuant to the GIA.  (Compl. ¶ 11.)  Plaintiff brought suit to enforce its rights as surety under the GIA against PCI, Persaud, and Day.  (Id. at ¶ 3.)  Defendant Day brought cross-claims of breach of contract, promissory estoppel, indemnification, and contribution against PCI and Persaud pursuant to their separate agreement.  (Cross-cl. ¶¶ 11-13.)

## II. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  The court must have both subject matter and personal jurisdiction over a defaulting party before it can render default judgment.

3

This Court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are of different states.  Plaintiff is a Delaware corporation with a principal place of business in New York.  (Compl. ¶ 1.)  Defendant PCI is a Maryland corporation with a principal place of business in Ashburn, Virginia.  (Id. at ¶ 2.)  Defendant Persaud is a citizen of Virginia, and defendant Day is a citizen of Maryland.  (Id. at ¶¶ 3-4.)  Because the parties are completely diverse and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this dispute.

Supplemental jurisdiction exists for Day's cross-claims pursuant to 28 U.S.C. § 1367.  The basis of the cross-claims arise from the same transaction or occurrence as plaintiff's claims, and the exercise of supplemental jurisdiction would not impermissibly add new parties to this matter or destroy the original diversity jurisdiction.  See Barnes v. West, Inc., 249 F. Supp. 2d 737 (E.D. Va. 2003) (supplemental jurisdiction exists where claims derive from a common nucleus of operative fact and would normally be expected to be tried in one proceeding).

This Court has personal jurisdiction over defendant Persaud because he is a citizen of Virginia, and over defendant PCI because it has its principal place of business in Ashburn,

4

Virginia.  (Compl. ¶¶ 2-3.)  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claim occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and Persaud and PCI reside within the district.  (Id. at ¶ 6.)

### III. Service of Process

Plaintiff's private process server served Andy Persaud with process in Leesburg, Virginia, by posting and mail on February 18, 2013, and February 19, 2013, pursuant to Fed. R. Civ. P. 4(e).  (Dkt. 11.)  Plaintiff's private process server served Maria Ochoa, designated by law to accept service on behalf of PCI, through the Secretary of the Commonwealth of Virginia, on February 28, 2013, pursuant to Fed. R. Civ. P. 4(h).  Therefore, service of process was proper.

### IV. Grounds for Default Judgment

Plaintiff filed this action on January 2, 2013.  (Dkt. 1.) PCI and Persaud filed their Answer on March 8, 2013.  (Dkt. 26.) Day filed his Answer and Cross-claims against PCI and Persaud on April 1, 2013.  (Dkt. 29.)

As more fully discussed in this Court's initial Report and Recommendation, defendants failed to appear in this matter on multiple occasions.  These failures included (1) not appearing for the final pretrial conference as Ordered by this Court; (2)

5

failing to show cause as to why a default should not be entered against defendants in accordance with Judge Trenga's Order of July 18, 2013; (3) refusing to comply with discovery requests; (4) absences at depositions ordered by this Court; and, (5) failing to appear at the hearing on defendant Day's Motion for Sanctions and Order of Entry of Default Judgment. (Dkt. 77.)

On August 8, 2013, the Clerk of this Court entered default as to defendants Andy Persaud and Persaud Companies, Inc. pursuant to plaintiff's Request for Entry of Default and Federal Rule of Civil Procedure 55. (Dkt. 69.) On August 21, 2013, the undersigned recommended that the Court enter default judgment against defendants PCI and Persaud on all counts of plaintiff's Complaint and on all counts of defendant/cross-claim plaintiff Day's claims. (Dkt. 77.)

After defendants Persaud and PCI failed to appear at the October 11, 2013, hearing to establish damages on the Motions for Default Judgment by plaintiff and defendant Day, the undersigned took this matter under advisement. (Dkt. 112.) Plaintiff filed supplemental memoranda and exhibits regarding its Motion for Default Judgment on September 13, 2013, and on November 15, 2013. (Dkts. 99, 115.) Defendant Day filed supplemental memoranda and exhibits regarding his Motion for Default Judgment on October 4, 2013, on October 16, 2013, and on November 22, 2013. (Dkts. 108, 114, 117.)

## FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiff has established the following facts.

Plaintiff, authorized to engage in the surety business in Virginia, is a Delaware corporation with a principal place of business in the State of New York. (Compl. ¶ 1.) Defendant PCI is a Maryland corporation with a principal place of business in Ashburn, VA. (Id. at ¶ 2.) Defendant Persaud is a resident of Virginia. (Id. at ¶ 3.) Defendant/cross-claim plaintiff Day is a resident of Maryland. (Id. at ¶ 4.)

On October 28, 2011, plaintiff, defendants PCI and Persaud, and defendant/cross-claim plaintiff Day executed a written General Indemnity Agreement. (Id. at ¶ 8, Ex. 1.) Pursuant to that agreement, PCI, Persaud, and Day agreed to exonerate and indemnify plaintiff, acting as surety, from and against any and all demands, losses, liabilities, costs, damages, expenses, and attorneys' fees that plaintiff might incur by reason of having executed bonds on behalf of PCI. (Id.) Specifically, PCI, Persaud, and Day agreed and promised, among other things:

[T]o pay to Surety upon demand:

1. All losses, costs and expenses of whatsoever kind or nature, including, but not limited to: court costs and the cost of services rendered by attorneys (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned

7

to make arrangements for Surety's legal
representation), investigators, accountants,
engineers, or other consultants, and any other losses,
costs or expenses incurred by Surety by reason of
having executed any Bond, or incurred by it on account
of any Default under this Agreement by any of the
Undersigned, or by reason of the refusal to execute
any bond.  In addition, the Undersigned agree to pay
to Surety interest on all disbursements made by Surety
in connection with such loss, costs and expenses
incurred by Surety at the maximum rate permitted by
law, calculated from the date of each disbursement.

2. An amount sufficient to discharge any claim
against Surety on any Bond, whether Surety will have
made any payment or established any reserve therefore.
Such payment to be in the amount deemed necessary by
the Surety to protect it from any loss, cost or
expense on any Bond.  The Undersigned acknowledges
that their failure to pay, immediately on demand by
the Surety, constitutes a Default under this Agreement
and entitles the Surety to injunctive relief for
specific enforcement of the foregoing provision.

(Id. at ¶ 29, Ex. 1 at 2 (Dkt. 1-3).)

The GIA defines "Undersigned" as including "[t]he Principal
[PCI] and all other persons or entities executing the Agreement,
their successors, executors, administrators, personal
representatives and assigns."  (Dkt. 1-3 at 1.)  Day is an
"Undersigned" with respect to the GIA, having executed it in
Anne Arundel County, Maryland, on October 28, 2011.  (Dkt. 1-3
at 10.)  Similarly, Persaud is an "Undersigned," having executed
the GIA in the District of Columbia on October 28, 2011.  (Dkt.
1-3 at 9.)

The GIA gave Hudson multiple rights, which included:

1. Surety shall have the exclusive right for itself

8

and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2. Surety may incur such expenses, including reasonable attorneys' fees, as well as investigative, accounting, engineering or other consultants' fees, as it deems necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has undertaken any Bond.

3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.

4. An itemized statement of loss and expense incurred by Surety, sworn by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

(Dkt. 1-3 at 2.)  The GIA further provides that it be "liberally construed so as to protect, exonerate and indemnity the Surety." (Id. at 4.)

In reliance on that GIA, plaintiff issued contract payment and performance bonds for at least 26 construction projects, including federal projects awarded by various departments and agencies.  (Id. at ¶ 9.)  Plaintiff submitted to the Court a copy of the Bond Line Card that further details this information.  (Id., Ex. 2. (Dkt. 1-4).)  The total Bond Limit was then valued at $15,693,765.00.  (Id.)

Several days before executing the GIA, on October 24, 2011,

Day entered into a separate agreement with PCI and Persaud.
(Cross-cl. at ¶ 19.)  The parties agreed that Day would execute
the GIA as a personal indemnitor in exchange for the payment by
PCI and Persaud to Day of one percent (1%) of the value of each
bond issued by plaintiff and secured under the GIA.  (Id.)  The
parties further agreed that (1) as between PCI/Persaud and Day,
the indemnity obligations of PCI/Persaud under the GIA would be
primary and precede any indemnity obligations or liability of
Day; (2) PCI and Persaud would indemnify Day for any liability,
claims, costs, and damages incurred by Day relating to the GIA;
and, (3) all funds from contracts relating to the GIA must run
through funds control.  (Id.)

     Plaintiff began receiving claims from PCI's subcontractors
and suppliers in the spring of 2012.  (Id. at ¶ 11.)  Plaintiff
initiated an investigation and requested information from PCI
relating to the projects for which Hudson furnished bonds on
behalf of PCI.  (Id.)  Despite repeated requests from plaintiff,
PCI and Persaud refused to provide sufficient information
regarding the status of these projects.  (Id. at ¶¶ 12-15.)  By
July 2013, plaintiff had received bond claims in the then-
collective amount of approximately $1,115,242.00.  (Id. at ¶
14.)  Therefore, plaintiff demanded by letter that PCI provide
collateral security pursuant to the GIA in the amount of
$1,215,242.00 by July 23, 2012 (the "Collateral Demand Letter").

(Id. at ¶ 14, Ex. 3 (Dkt. 1-5).)

Following a meeting between plaintiff and PCI, PCI arranged to satisfy some of the claims identified in the Collateral Demand Letter. (Id. at ¶ 16.) Plaintiff, in turn, agreed to reduce the amount of funds sought in its Collateral Demand Letter, to take control of funds for certain projects, and to be added to agreements that PCI maintained with its escrow manager. (Id. at ¶ 18.) PCI subsequently refused to comply with these conditions. (Id. at ¶¶ 17-22.) As of the filing of its Complaint, plaintiff had incurred $2,814.197.56 in payment bond claims in addition to legal and consulting fees, costs and expenses. (Id. at ¶¶ 25-28.)

Furthermore, PCI and Persaud refused to abide by the October 24, 2011, agreement with Day. Specifically, in violation of that agreement, PCI and Persaud did not pay to Day one percent (1%) of the value of the bonds secured by the GIA, refused to honor the provisions regarding the priority of the indemnity obligations of PCI and Persaud, and did not indemnify Day for costs and damages arising from his role in the GIA. (Cross-cl. ¶ 12; Dkt. 117 at ¶ 6.)

Plaintiff and defendant Day settled plaintiff's claims against Day on September 17, 2013. (Dkt. 108 at ¶ 5.) Pursuant to that settlement, Day conveyed to plaintiff $1,700,000 for a full and final release of plaintiff's claims. (Id. at ¶ 6.)

11

DISCUSSION

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted.  Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim.  GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).  As such, it is appropriate to evaluate plaintiff's claims against the standards of Fed. R. Civ. P. 12(b)(6).

Additionally, the Court notes that pursuant to its multiple failures to appear in this matter, defendants have waived any defenses based on the statute of frauds.  See, e.g. Moore Lumber Corp. v. Walker & Williamson, 67 S.E. 374, 375 (Va. 1910).

**I. Evaluation of Plaintiff Hudson Insurance Company's Claims**

Plaintiff's Complaint asserted four counts: (1) specific performance; (2) *quia timet* and injunctive relief; (3) breach of contract; and, (4) breach of fiduciary duty.  Plaintiff now moves for the Court to enter default judgment against defendants PCI and Persaud on its breach of contract and breach of fiduciary claims and, upon entry of judgment, to dismiss the remaining counts.

The Court must first address the law governing this aspect of the dispute.  Courts sitting in diversity should apply the choice of law rules of the forum state.  Hitachi Credit Am.

12

Corp. v. Signet Bank, 166 F.3d 614, 623-24 (4th Cir. 1999).
Virginia may apply the terms of a contract according to the law
of the place where the contract was made.   C.I.T. Corp. v. Guy,
195 S.E. 659, 661 (Va. 1938).   As indicated by the GIA,
defendants PCI and Persaud executed the GIA in the District of
Columbia.   (Dkt. 1-3 at 8-9.)   Therefore, plaintiff's claims
against PCI and Persaud should be interpreted in accordance with
the laws of the District of Columbia.

A.   *Breach of Contract Claim*

To prevail on a claim of breach of contract, a party must
establish (1) the existence of a contract; (2) performance by
plaintiff; (3) failure to perform by defendant; and, (4) damages
caused by the breach.   Tsintolas Realty Co. v. Mendez, 984 A.2d
181, 187 (D.C. 2009).   The District of Columbia "adhere[s] to an
objective law of contracts, meaning that the written language
embodying the terms of an agreement will govern the rights and
liabilities of the parties regardless of the intent of the
parties at the time they entered into the contract, unless the
written language is not susceptible of a clear and definite
meaning."   Aziken v. District of Columbia, 70 A.3d 213, 218-19
(D.C. 2013) (citations omitted).   Here, the terms of the GIA are
sufficiently clear for this Court to find that the terms of the
agreement adequately govern the rights and liabilities of the
respective parties.

Accepting the facts of the Complaint as true, plaintiff shows that a valid contract, the General Indemnity Agreement, exists and that obligations or duties arise from that contract. Defendants agreed to exonerate and indemnify plaintiff Hudson from and against any and all liabilities, damages, losses, costs, charges, expenses, consultants' fees, and attorneys' fees incurred as a result of the issuance of any bond on behalf of PCI. (Id. at ¶ 48.)  Specifically, pursuant to the duly executed and notarized GIA, PCI and Persaud agreed to pay to plaintiff, acting as Surety,

> 1. All losses, costs and expenses of whatsoever kind or nature, including, but not limited to: court costs and the cost of services rendered by attorneys . . . investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond.
>
> . . .
>
> 2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefore. Such payment to be in the amount deemed necessary by the Surety to protect it from any loss, cost or expense on any Bond.  The Undersigned acknowledges that their failure to pay, immediately on demand by the Surety, constitutes a Default under this Agreement and entitles the Surety to injunctive relief for specific enforcement of the foregoing provision.

(Ex. 1-3 at 2.)  Plaintiff's rights under the GIA include:

> 1. Surety shall have the exclusive right for itself

14

and the Undersigned to determine in its sole and
absolute discretion whether any claim or suit upon any
Bond shall, on the basis of belief of liability,
expediency or otherwise, be paid, compromised,
defended or appealed.

2. Surety may incur such expenses, including
reasonable attorneys' fees, as well as investigative,
accounting, engineering or other consultants' fees, as
it deems necessary or advisable in the investigation,
defense and payment of such claims and completion of
any Contract with respect to which Surety has
undertaken any Bond.

3. Surety's determination in its sole and absolute
discretion of the foregoing shall be final and
conclusive upon the Undersigned.

4. An itemized statement of loss and expense incurred
by Surety, sworn by an officer of Surety, shall be
prima facie evidence of the fact and extent of the
liability of Undersigned to Surety in any claim or
suit by Surety against Undersigned.

(Id.) The parties further agreed that the GIA was to be

"liberally construed so as to protect, exonerate and indemnity

the Surety." (Dkt. 1-3 at 4.) Plaintiff performed its

obligations by furnishing contract payment and performance bonds

for numerous projects on behalf of PCI. (Id. at 3-4.)

Defendants breached the terms of the GIA contract in

multiple ways. These breaches, which caused damages to

plaintiff, included the failure to provide collateral funds and

to reimburse plaintiff for all fees, costs, and expenses

incurred in connection with the GIA. (Compl. ¶¶ 11-32.)

## B.    Breach of Fiduciary Duty

To prevail on a claim of breach of fiduciary duty, a plaintiff "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties." Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Found, Inc., 607 F. Supp. 2d 185, 190-91 (D.D.C. 2009).  Whether a fiduciary relationship exists is a fact-intensive question, and the fact-finder must consider "the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties." Firestone v. Firestone, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (quoting Church of Scientology Int'l v. Eli Lilly & Co., 848 F. Supp. 1018, 1028 (D.D.C. 1994)).

Plaintiff alleges sufficient facts to show that defendants breached a fiduciary duty.  Pursuant to the GIA, defendants agreed that

> all monies earned by [PCI] under any Contract [for which plaintiff issued any bond] are trust funds, whether in the possession of [PCI] or otherwise, for the benefit of, and for payment of [PCI's] obligations for labor, material and supplies furnished to [PCI] in performance of such Contract for which [plaintiff] would be liable under any Bond on such Contract, and the performance of [PCI's] or [plaintiff's] obligations to any obligee on such Contract.

16

(Ex. 1-3 at ¶ 4.)  Accordingly, defendants owed a duty to

plaintiff to preserve the integrity of the contract funds for

each contract, and to apply them solely for the payment of PCI's

obligations under the various contracts.  (Compl. ¶ 53.)

However, notwithstanding those provisions, PCI failed to

preserve the integrity of those funds by incurring numerous

accounts payable and commingling funds.  (Id. at ¶¶ 25-27.)

These actions resulted in damages to plaintiff through the

various payment and performance bond claims and losses, and the

attorneys' and consultants' fees, costs, and expenses.  (Id. at

¶ 54.)  Therefore, a valid fiduciary duty existed, defendants

breached that duty, and the breach caused damages.

### C.   *Damages as to Plaintiff Hudson Insurance Company*

Plaintiff requests the entry of judgment against defendants

PCI and Persaud, jointly and severally, in the collective amount

of $2,037,338.51.[2]  (Dkt. 115 at 1.)  This amount constitutes

---

[2] In support of these damages, plaintiff submitted Verified Proof
of Claim Forms (Dkt. 99-2), the Affidavit of Wayne D. Lambert,
the Regional Manager for Cashin, Spinelli & Ferretti, LLC (Dkt.
99-3), the Affidavit of Archibald Wallace III, of
WallacePledger, PLLC (Dkt. 99-4), the Affidavit of Margaret
Killeen, Hudson's Senior Vice President and Chief Claims Officer
(Dkt. 101), the Affidavit of Archibald Wallace, III (Dkt. 110),
the Supplemental Affidavit of Wayne D. Lambert (Dkt. 111), the
Second Supplemental Affidavit of Wayne D. Lambert, (Dkt. 115-4),
the Affidavit of Walter Maxwell, Hudson's Claims Unit Manager,
Surety (Dkt. 115-5), and the Second Supplemental Affidavit of
Archibald Wallace, III (Dkt. 115-6).

total losses of $3,737,338.51, less a credit for the
$1,700,000.00 settlement with defendant Day. (Dkt. 115-3.) Of
that $3,737,338.51, $2,583,233.86 is for amounts paid and
incurred as of November 14, 2013, and $1,154,104.65 is for
claims and losses that are pending and projected. (Id.) Those
amounts are broken down as follows:

| Amounts for Claims Paid and Incurred | | |
|---|---|---|
| Payment Bond Claims Paid | $2,123,287.25 | Dkt. 115-4, ¶ 5 |
| Credit for Funds Contract Received | ($475,758.48) | Dkt. 115-4, ¶ 6 |
| Consultants Fees, Costs, Expenses (through September 30, 2013) | $422,476.58 | Dkt. 115-4, ¶ 12 |
| Attorneys' Fees, Costs and Expenses | | |
| WallacePledger, PLLC | $411,807.27 | Dkt. 115-6, ¶ 6 |
| Wright, Constable & Skeen LLP | $16,723.75 | Dkt. 101, ¶ 16 |
| Bovis, Kyle, Burch & Medlin, LLC | $5,642.45 | Dkt. 101, ¶ 16 |
| QuinnLaw, LLC | $25,936.55 | Dkt. 101, ¶ 16 |
| Wolf, Horowitz & Etlinger LLC | $16,011.80 | Dkt. 101, ¶ 16 |
| Wolff & Samson PC | $25,339.20 | Dkt. 101, ¶ 16 |
| The Stewart Law Firm | $5,265.00 | Dkt. 101, ¶ 16 |
| Plaintiff's Direct Expenses/Costs | $6,502.49 | Dkt. 101, ¶ 18 |
| **Total Amounts Paid and Incurred** | **$2,583,233.86** | |

| Amounts for Claims Pending and Projected | | |
|---|---|---|
| Payment Bond Claims Pending | $188,046.04 | Dkt. 111, ¶ 7 |
| Performance Bond Losses | $365,367.90 | Dkt. 111, ¶ 11 |
| Liquidated Damages—Cooling Towers | $300,000.00 | Dkt. 111, ¶ 11 |
| PCI Accounts Payable | $175,690.71 | Dkt. 111, ¶ 8 |
| Conslt./Atty. Fees, Costs, Expenses | $125,000.00 | Dkt. 111, ¶ 14 |
| **Total Amounts Pending and Projected** | **$1,154,104.65** | |

Therefore, the total losses that plaintiff has incurred and
is expected to incur amount to $3,737,338.51. After factoring
in the $1,700,000.00 amount by which plaintiff settled with Day,
plaintiff requests judgment of $2,037,338.51.

18

These damages are recoverable against defendants in accordance with the express terms and conditions of the GIA. PCI and Persaud agreed to exonerate, indemnify, and hold plaintiff harmless from any and all losses, including attorneys' and consultant fees, costs, and expenses.  Specifically, defendants agreed to pay to plaintiff, acting as Surety,

> 1. All losses, costs and expenses of whatsoever kind or nature, including, but not limited to: court costs and the cost of services rendered by attorneys . . . investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond.
>
> . . .
>
> 2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefore. Such payment to be in the amount deemed necessary by the Surety to protect it from any loss, cost or expense on any Bond.  The Undersigned acknowledges that their failure to pay, immediately on demand by the Surety, constitutes a Default under this Agreement and entitles the Surety to injunctive relief for specific enforcement of the foregoing provision.

(Ex. 1-3 at 2.)  The GIA is to be "liberally construed so as to protect, exonerate and indemnity the Surety."  (Id. at 4.)

Additionally, plaintiff's rights under the GIA include the right to "incur such expenses, including reasonable attorneys' fees . . . or other consultants' fees, as it deems necessary or advisable in the investigation, defense and payment of such

19

claims." (Id. at 2.)  The GIA states that Hudson's "determination in its sole and absolute discretion of the foregoing shall be final and conclusive," and that "[a]n itemized statement of loss and expense incurred by Surety, sworn by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned." (Id.)  Therefore, the express rights conferred by the GIA make it plainly clear that defendants PCI and Persaud must exonerate plaintiff for all losses incurred in connection with the GIA.

Plaintiff amply complied with its responsibilities to provide detailed and accurate records by plaintiff's officers regarding the liabilities and expenses incurred in connection with the GIA.  Defendants breach forced plaintiff, as surety, to incur these damages and liabilities.  Therefore, defendants are liable to plaintiff for the full amount of losses in this case.

The undersigned notes that the Court is authorized to enter judgment for those damages that plaintiff expects to sustain but has not yet paid as a result of its issuance of bonds as surety.[3]

_____

[3] In a similar case, the United States District Court for the Middle District of Alabama considered a surety's motion for summary judgment on its claim for exoneration and specific performance.  Travelers Cas. & Sur. Co. of Am. v. Thorington, 2009 U.S. Dist. LEXIS 114043 (M.D. Ala. Dec. 8, 2008).  There, the surety issued payment and performance bonds for two federal construction projects pursuant to an indemnity agreement by which the indemnitors promised to "exonerate, defend, and hold

As the Fourth Circuit observed in <u>Fidelity & Deposit Company of Maryland v. Bristol Steel & Iron Works, Inc.</u>, "when an express indemnification contract exists . . . a surety is entitled to stand upon the letter of his contract."  722 F.2d 1160, 1163 (4th Cir. 1983) (internal citations omitted).  Thus, because defendants agreed to convey to plaintiff "the amount deemed necessary by the Surety to protect it from any loss, cost or expense on any Bond," (Ex. 1-3 at 2), both incurred and projected damages are recoverable.

Plaintiff may not, however, reap a windfall from this judgment.  Should plaintiff determine that the amount of judgment entered was in excess of the amount necessary to fulfill its obligations, plaintiff is obligated to return to defendants PCI and Persaud whatever funds remain.[4]

---

[surety] harmless from all loss, cost, or expense[.]"  <u>Id.</u> at *1.  Due to subcontractors' claims, the surety incurred losses of $748,529.77, and it anticipated another $298,730.91 in future losses and expenses.  <u>Id.</u>  The court entered judgment for both incurred and future damages, and held that any sums deposited by the indemnitor would be used to pay claims "or be held by [the surety] as collateral security against any Loss or unpaid premium on any Bond."  <u>Id.</u> at *8-9.  <u>See also</u> <u>Tennant v. United States Fid. & Guar. Co.</u>, 17 F.2d 38 (3rd Cir. 1927) (finding that an indemnity agreement gave the surety the rights of subrogation, indemnity, and the immediate ability to collect damages); <u>Ulico Cas. Co. v. Abba Shipping Lines, Inc.</u>, 891 F. Supp. 2d 4 (D.D.C. 2012) (entering default judgment on the full collateral amount requested, plus attorneys' fees).

[4] Other courts have taken this approach in similar indemnity situations.  For example, the Eastern District of Pennsylvania entered default judgment for anticipated losses of $404,875.00

The undersigned finds that the amounts attorneys' fees, costs, and expenses are reasonable compensation for work necessarily expended to enforce plaintiff's rights pursuant to the GIA.   Therefore, the undersigned recommends that the Court grant plaintiff's request and enter judgment in favor of plaintiff Hudson and against defendants PCI and Persaud in the amount of $2,037,338.51, and that plaintiff return to defendants any excess funds should the judgment exceed the amount necessary to fulfill plaintiff's obligations.   If further action is required to enforce and collect this judgment, plaintiff may apply to this Court or to the court in which enforcement is

---

in favor of a surety that filed suit against indemnitors pursuant to a general indemnity agreement.   That court held that

> [U]nder the express terms of the [indemnity agreement], [the surety] may establish a reserve to cover any future claim against the Payment Bonds, and may demand that [the indemnitors] provide it with funds which [the surety] is to hold as collateral against the reserve. . . . Thus, [the indemnitors] must pay [the surety] the full amount of the reserve set under the Payment Bonds in accordance with the default judgment.   However, the surety may not reap a windfall by retaining collateral security payments which are not used to pay claims from an obligee. [The surety] has acknowledged its obligation to return whatever remains of [the indemnitors'] collateral security payments if the claims it had envisioned failed to materialize.

Fid. & Guar. Ins. Co. v. Keystone Contractors, Inc., 2002 Dist. LEXIS, at *12 (E.D. Pa. August 14, 2002) (citing United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998)).

sought for reasonable attorneys' fees and costs in addition to those set out in this Report and Recommendation.

## II. Evaluation of Defendant Gary Day's Cross-claim

Defendant/cross-claim plaintiff Day brought four counts against defendants PCI and Persaud: (1) breach of contract; (2) promissory estoppel; (3) indemnification; and, (4) contribution. (Dkt. 29.)  Day now asks that the Court enter default judgment against defendants PCI and Persaud on its breach of contract cross-claim and, upon entry of judgment, to dismiss the remaining counts.

As the Court's original jurisdiction is based on diversity of citizenship, it applies the choice of law rules of the Commonwealth of Virginia, the forum state.  See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 623–24 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 317 U.S. 487, 496-97 (1941)). Here, the construction, validity, interpretation and performance of the contract is to be interpreted pursuant to the law of the place of performance.  Elite Entertainment, Inc. v. Khela Bros. Entertainments, Inc., 296 F. Supp. 2d 680, 692 (E.D. Va. 2005) (citing Equitable Trust Co. v. Bratwursthaus Mgmt. Corp., 514 F.2d 565 (4th Cir. 1975).  Defendants PCI and Persaud were required to make payments under the agreement at issue to cross-claim plaintiff Day in Maryland.  (Dkt. 117 at 6.)  Therefore, Maryland law applies.

### A.    Breach of Contract

To be successful on a breach of contract claim, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 365 Md. 166, 174, 776 A.2d 645, 651 (Md. Court of Appeals 2001) (citing Continental Masonry Co., Inc. v. Verdel Const. Co., Inc., 279 Md. 476, 480, 369 A.2d 566, 569 (1977).

Day alleges sufficient facts to show that PCI and Persaud breached a contractual obligation owed to Day.  On October 24, 2011, Day entered into an agreement with defendants whereby the parties agreed that Day, as indemnitor, would execute the GIA in favor of plaintiff Hudson in exchange for the payment of one percent (1%) of the value of each bond issued by plaintiff and secured by the GIA.  (Id. at ¶ 6.)  Furthermore, defendants PCI and Persaud agreed that (1) as between PCI/Persaud and Day, the indemnity obligations of PCI and Persaud would be primary to any obligations of Day; (2) PCI and Persaud would fully and completely indemnify Day for any and all claims, costs, and damages incurred by Day relating to the GIA; and, (3) all funds relating to the GIA must run through funds control.  (Id.) Relying on those representations, Day executed the GIA on October 28, 2011.  (Id. at ¶ 7.)

Defendants PCI and Persaud breached their contractual

obligations Day in several ways.  First, defendants did not pay
Day one percent (1%) of the value of each bond issued by
plaintiff and secured by the GIA.  (Id. at ¶ 12.)  Second, they
failed to run funds from contracts relating to the GIA through
funds control.  (Id.)  Third, they refused to acknowledge their
agreement that the indemnity obligations of PCI and Persaud
under the GIA would be primary to any indemnity obligations or
liability of Day.  (Id.)  Fourth, they failed to indemnify Day
for any and all claims, costs, and damages incurred in relation
to the GIA.  (Id.)  Day suffered actual damages as a result of
these breaches.

B.   *Damages as to Cross-Claim Plaintiff Day*

    Day originally asked the Court to determine that PCI and
Persaud were liable for the amount of any judgment that may be
entered against Day, in addition to attorneys' fees and
expenses.  (Dkt. 66 at 3.)  Day later settled the claims brought
against him by Hudson through the payment of $1,700,000.  (Dkt.
108 at ¶¶ 5-8.)  Therefore, Day now seeks default judgment
against PCI and Persaud for the settlement amount of $1,700,000,
plus attorneys' fees and expenses.  (Dkt. 117 at 6-7.)

    Plaintiff submitted to the Court a Settlement and Release
Agreement showing that Day agreed to pay plaintiff Hudson the
sum of $1,700,000 for a full and final release of plaintiff's
claims against Day under the GIA.  (Dkt. 108-1.)  Because Day's

25

role as a party to the GIA formed the basis for plaintiff's allegations against Day, these damages are recoverable. Therefore, the undersigned recommends that the Court enter default judgment against Persaud Companies, Inc. and Andy Persaud and in favor of cross-claim plaintiff Day in the amount of $1,700,000.

Finally, the undersigned recommends that the Court grant cross-claim plaintiff Day's request for attorneys' fees.[5]   In support of this request, plaintiff submitted the Affidavit of Brian S. Jablon (Dkt. 108-2), which incorporated time and expense reports for Wellens & Jablon, LLC totaling $33,310.00 (Dkts. 114-1 & 114-2), and for Wise & Donahue, PLC totaling $48,977.06 (Dkt. 114-3 & 4).   Therefore, defendant/cross-claim plaintiff Day incurred a total amount of $82,287.08 in attorneys' fees and expenses.

The undersigned finds that the amounts submitted are reasonable compensation for work necessarily expended to enforce defendant/cross-claim plaintiff Day's rights.   If further action

---

[5] Day noted in his Summary Memorandum of Law (Dkt. 117 at 6-7) and in his Supplemental Memorandum of Damages (Dkt. 108 at 2) that the total amount of attorneys' fees and costs incurred in this matter amounted to $81,287.06   However, upon consultation of the itemization of attorneys' fees and expenses (Dkts. 114-1 through 114-4), as well as the Affidavit of Brian S. Jablon (Dkt. 108-2), the undersigned finds that the total amount of attorneys' fees and costs incurred in this matter is $82,287.06. This includes $48,977.06 for Wise & Donahue, PLC and $33,310.00 for Wellens & Jablon, LLC.   Therefore, this corrected amount will be used in lieu of the originally requested amount.

is required to enforce and collect this judgment, defendant/cross-claim plaintiff Day may apply to this Court or to the court in which enforcement is sought for reasonable attorneys' fees and costs in addition to those set out in this Report and Recommendation.

### III. Post-Judgment Interest

Plaintiff Hudson and defendant/cross-claim plaintiff Day also request that post-judgment interest be awarded. In a diversity case, awards of post-judgment interest are governed by federal law. Hitachi, 166 F.3d at 633 (citing Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989)). The relevant federal statute provides that

> Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

28 U.S.C. § 1961(a) (2006). The undersigned therefore recommends that plaintiff Hudson and defendant/cross-claim plaintiff Day are entitled post-judgment interest pursuant to 28 U.S.C. § 1961(a).

### RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of plaintiff Hudson

27

Insurance Company on its breach of contract and breach of fiduciary duty claims against defendants Persaud Companies, Inc. and Andy Persaud, jointly and severally, in the amount of $2,037,338.51, and to dismiss the remaining counts.

Furthermore, the undersigned recommends that default judgment be entered in favor of cross-claim plaintiff Gary W. Day on his breach of contract claim against defendants Persaud Companies, Inc. and Andy Persaud, jointly and severally, in the amount of $1,700,000 in damages, plus costs and attorneys' fees in the amount of $82,287.06, and to dismiss the remaining counts.

<u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendants at the following addresses:

    Persaud Companies, Inc.
    6701 Democracy Blvd., Suite 300
    Bethesda, MD 20817

    Andy Persaud
    41738 Putters Green Court
    Leesburg, VA 20176


                              /s/
                    THERESA CARROLL BUCHANAN
                    UNITED STATES MAGISTRATE JUDGE

December 12, 2013
Alexandria, Virginia